
Applied
Psychological
Techniques, Inc.

# TRIAL STATEMENT
## OF
## DR. MICHAEL E. MOOMAW

### in

### *Claude Grant, et al. v. Metropolitan Government of Nashville and Davidson County, Tennessee*

April 8, 2008

Applied Psychological Techniques, Inc.
315 West Ponce De Leon Avenue, Suite 701
Decatur, GA 30030
(404) 370-0505

## TRIAL STATEMENT OF
## DR. MICHAEL E. MOOMAW
### in
## Claude Grant, et al. v. Metropolitan Government of Nashville and Davidson County, Tennessee

## I. PROFESSIONAL EXPERIENCE

My name is Michael E. Moomaw of Applied Psychological Techniques, Inc. (APT). I am currently employed as Regional Director of APT's Southern Region office in Decatur, Georgia. I am a graduate of Georgia Institute of Technology, where I earned a Ph.D. degree in Industrial and Organizational Psychology in 1990. My work experience over the past 20 years has been in the areas of Industrial Psychology and Human Resources Management focusing on the development and validation of employee selection procedures. I have provided consultation in the areas of job analysis, personnel assessment, employment testing, performance management, and measurement. My clients have ranged from Fortune 100 companies to public sector employers and have covered a broad range of industries, including electronics, pharmaceuticals, consumer products, financial services, utility, and aerospace. I have testified as an expert at trial or by deposition in one other case.

## II. INTRODUCTION

On December 17, 2004, at the request of counsel for the Plaintiffs, I submitted an expert report that described my statistical analysis of differences in salary type and pay grade representation between African-Americans and Whites employed at Metropolitan Water Services Department of Nashville and Davidson County, TN (or Metro Water), between January 2000 and August 2004. That analysis led me to conclude that the available data provide statistical evidence that African-Americans are significantly over-

2

represented in lower pay grades within all salary types and significantly under-represented in higher pay grades within all salary types at Metro Water.

In March of 2007, I was provided with updated Metro Water employee data that covered the period January 1, 2000 through October 11, 2006. The data included approximately two years of additional data since my original report was submitted. I replicated the analyses conducted in 2004 and conducted additional analyses using the updated data. This statement provides background information and outlines the findings of my original analyses in 2004 and the follow up analyses conducted in 2007.

## III. 2004 ANALYSES AND FINDINGS

Based on the filings, the issues of this litigation involve Metro Water's systemic pattern and practice of discrimination against African-Americans in post-employment opportunities including disparate job assignments, promotions, pay, accommodations, discipline and other terms and conditions of employment. A critical factor relative to these issues is the racial composition, or ethnic representation, in positions within the Metropolitan Water Services Department (or Metro Water) from January 1, 2000 to August, 2006.

In 2004, to investigate this issue, I reviewed Metro Water reports outlining the racial composition of the department, reviewed pay plans covering the relevant positions and years, reviewed job descriptions for Metro Water jobs, and analyzed employee history data that outlined the positions held and other employment information, such as salary grades, for employees during the relevant period. The analyses conducted address a critical question or issue in the case, namely disparity in post-employment job assignments between African-American employees and White

3

employees. Job assignments are critical because they relate directly to individuals' salaries and opportunities for advancement.

For the 2004 analyses, the original employee history data were compiled and sorted by year for years 2000 through 2004. All employees who were employed at some point in a given year were included in the data for analysis purposes. Specifically, employees who had termination or resignation dates within a given year were still included for analysis purposes since they held a position during the year. However, employees having termination or resignation dates were not included in analyses for years subsequent to their departure.

Each employee's final position or job was determined for each year. Based on the final job identified; various classification information was determined for the position of each employee. The classification information, which is used to categorize jobs for compensation and reporting purposes, included:

- FLSA Status, which is a position's status relative to the minimum wage and overtime provisions of the Fair Labor Standard Act
- EEO Function, which is a categorization based on specific job functions or types used in government reports, or the EEO-1 report, used by companies to report the distribution of their workforce across job functions or types
- Salary Type, which represents Metro Water pay or salary plans, and
- Pay Grade, which represents a job's position or step in the pay range for the job.

**FLSA Status** included two categories, "Exempt" and "Non-Exempt." The **EEO Functions** identified for Metro Water, and sample positions for each, included:

4

- Administrative Support with positions such as Customer Service Supervisor, Administrative Assistant

- Professionals, which covered positions such as Technical Services Coordinator, Biologist 2, Customer Service Manager

- Service Maintenance covering positions such as Custodian 2, Customer Service Field Representative 1, Equipment Operator 1

- Skilled Craft Workers with positions such as Industrial Electrician 1, Masonry Worker, Painter 1

- Technicians covering positions such as Application Technician 3, Engineering Technician, Environmental Technician

- Water Service Maintenance, which covered positions such as Water Maintenance Technician, Water Maintenance Leader, Water Maintenance Supervisor

- Officials/Administrators covering positions such as Information Systems Manager, Treatment Plant Manager, Water Services Director, and

- Protective Service Workers, which included positions such as Security Officer Coordinator, Fire Fighter 1, Police Officer 1

The **salary types** were drawn from Metropolitan Government, Nashville and Davidson County pay plans covering the years 2000 through 2004. The relevant salary types include:

- Trades & Labor Schedule (TLS) – covering positions with the primary duty involving **"the performance of physical work which requires knowledge or experience of a trade, craft, or of a manual-labor nature."** This Salary Type has three separate sub-schedules or sub-types:

  o TG – which contains "positions with worker responsibility"

  o TL – which contains "positions with lead responsibility"

  o TS – which contains "positions with supervisory responsibility"

- Standard Range Schedule (SR) – covering positions, even if physical work is required, with a primary duty that "**requires knowledge or experience of an administrative, clerical, scientific, artistic, or technical nature <u>not</u> related to trade, craft, or manual-labor work"**

- Public Safety Schedule (PS) – covers sworn members of the Metro Police Department and Emergency Medical Service, Fire Suppression, and other designated employees of the Fire Department, and

- Special Pay Type - Department Directors (DP)

FLSA Status and EEO Function for employees' job titles were not provided in the employee history data received. As a result, FLSA and EEO Function information was drawn from a review of the job descriptions provided by Metro Water for the relevant positions. Job descriptions were missing for certain positions or, in some cases an exact match could not be made between an employee's job title and a title in the job descriptions. In these situations, no FLSA Status or EEO Function could be determined.

6

To investigate the issues relevant to this case, with the assistance of a consultant in our firm, I conducted analyses to determine the racial composition of the workforce or ethnic representation in positions or jobs based on their:

- FLSA Status (Exempt, Non-exempt)
- EEO Function
- Salary Type, and
- Pay Grade by Salary Type

Specifically, I looked at the proportion or number of employees by ethnic group who held positions classified at various levels or categories for each of these variables. There were very few employees in ethnic groups other than White or Black. As such, employees in other ethnic groups were combined into an "Other" category. Further, a total of 61 jobs or individuals were excluded from the FLSA Status and EEO Function analyses due to incomplete information.

**REVIEW OF THE 2004 FINDINGS**

As stated previously, a key issue in this case is the degree of representation of minorities in various job types or levels. The results of the analyses conducted using the employee history data address this issue as it relates to FLSA Status, EEO Function, Salary Type, and Pay Grade within each Salary Type. What follows is a review of specific findings.

*FLSA Status.* The results of the analyses based on FLSA Status indicated statistically significant differences between White and Black employees based on the FLSA Status of the positions or jobs held by employees in each group. As described in Slides 15 through 20, significantly fewer Black employees than White employees held

7

positions categorized as "exempt" in each year. The results indicated that only 8.8% to 11.3% of African-American employees held positions categorized as "exempt" during the years 2000 through 2004 while 21.2% to 23.6% of the White employees in Metro Water held positions categorized as "exempt" during the same period. Conversely, a significantly greater percentage of African-American employees held non-exempt positions than White employees in each year. The percentages ranged from 88.70% to 91.20% for African-Americans versus 76.40% to 78.80% for White employees. African-American employees typically held non-exempt, hourly positions across all years.

*EEO Function.* As described in Slides 21 through 28, results of analyses based on the EEO Function of positions indicated that a significantly greater proportion or percentage of African-American employees than White employees held jobs in the Service Maintenance EEO Function in each year from 2000 through 2004. The percentages ranged from 30.50% to 39.20% for African-American employees compared to 12.80% to 18.70% for White employees. Also, for the years 2001 through 2004, a significantly smaller proportion of African-American employees than White employees held positions classified in the Professional and Technician EEO Functions. For the Professional function, the percentages ranged from 6.00% to 7.40% for African-American employees versus 13.00% to 15.70% for White employees. For the Technician function, the percentages ranged from 4.70% to 10.20% for African-American employees compared to 12.20% to 17.30% for White employees. Finally, in 2000, a significantly smaller proportion of Black employees held positions in the Administrative Support EEO Function.

8

*Salary Type*. The results of the analyses based on Salary Type, described in Slides 29 through 35, indicated that a significantly greater percentage or proportion of African-American employees than White employees held positions classified in the TG salary type of the Trade and Labor Schedule in each year. The percentages ranged from 33.50% to 37.70% for African-American employees versus 18.20% to 23.90% for White employees. Again, the TG salary type covers positions with "worker responsibility" in positions involving the performance of physical work that requires knowledge of, or experience in, a trade, craft, or manual-labor nature. The results also indicated that significantly fewer African-American employees than White employees held positions classified in the SR salary type in each year from 2000 to 2004. The percentages ranged from 35.50% to 39.90% for African-American employees to 52.70% to 55.80% for White employees. The SR salary type includes jobs such as Biologist, Fleet Manager – Heavy Equipment, Special Projects Manager.

*Pay Grade by Salary Type*. The results of the pay grade by salary type analyses, described in Slides 36 through 76, indicated that in almost all cases, a greater percentage of African-Americans held positions at lower pay grades than White employees holding positions in the same Salary Types. For example, in the year 2000, approximately 67% of the Black employees and approximately 37% of White employees holding positions in the TG salary type were in pay grades 2 through 6. Conversely, approximately 63% of White employees and approximately 32% of African-American employees holding positions in the TG salary type were in pay grades 7 through 13. With the exception of the TS salary type, this trend was found to be consistent across years and salary types. For the TS salary type, the number of African-Americans

9

holding positions in the salary type between 2000 through 2004 was quite small. The actual numbers ranged from five (5) to ten (10). Relatively small changes in the pay grades for a group this small could have an impact on the percentages for the group. However, the results indicate that African-Americans typically held jobs in lower pay grades for other salary types during the years 2000 through 2004.

## 2004 OPINIONS REGARDING REPRESENTATION

The results of the 2004 analyses clearly indicated significant differences in representation between White and Black employees in positions based on FLSA Status, EEO Function, Salary Type, and Pay Grade within Salary Type. Specifically, the results indicate that Black employees were under-represented compared to White employees in "exempt" positions, positions in the Professional and Technician EEO Functions, positions in the SR Salary Type, and positions in higher pay grades within all Salary Types except TS. Greater numbers or proportions of Black employees tended to be in positions that are predominately "manual labor" positions, covered by the TG salary type, and those at lower pay grades within each salary type. The results are consistent across the years 2000 through 2004.

## SUMMARY OF 2004 CONCLUSIONS

It is my opinion that a significantly smaller proportion of Black employees are represented in exempt positions, positions classified in the Professional and Technical EEO Functions, positions in the SR salary type that includes professional and manager positions, and positions in higher pay grades within almost all salary types. This is a significant issue when one is considering opportunities for advancement and increased

10

salaries as these differences represent limitations on the employment and advancement opportunities and earnings of Black employees at Metro Water.

## IV. 2007 ANALYSES AND FINDINGS

My original analyses were conducted on employee history data covering the period January 2000 to August, 2004. In March of 2007, I was provided data that included additional employee data covering the end of 2004 through October 11, 2006. As such, with the assistance of consultants in our firm, specific analyses were conducted using the data provided. The following sections outline the additional analyses and the findings.

**Replication and Extension of Original Analyses**

As mentioned above, the updated Metro Water employee data received included additional employee history data covering almost two years. As such, an initial step was to repeat the analyses described in my 2004 report including the additional data covering the period January 2000 through October 11, 2006.

To ensure consistency in the results reported across years and because different data were being used, the same criterion used by the Defendant's expert to determine employees who would be included in the analyses was used. Specifically, only employees who were active at the end of a given year were included in the analyses. This differs from the analyses reported in my 2004 report in so far as employees who were employed for even part of a year (e.g., resignation, termination) were included in the analyses for that year. However, such individuals were excluded from the next year's analyses. As a result, the number of employees presented for years 2000

Case 3:04-cv-00630   Document 143-1   Filed 04/08/08   Page 11 of 23 PageID #: 3184

through 2004 in the 2007 results may differ from the number presented in my 2004 report.

As in my original report, the initial analyses were conducted to evaluate the racial composition or ethnic representation in positions within Metro Water. These analyses once again directly relate to the question or issue of job assignment relevant to this litigation. The analyses were conducted to assess African-American and White representation in positions based on FLSA status (exempt, non-exempt), EEO Function (for example, Administrative Support, Professional functions), Salary Type (including SR, TG, TL, and TS), and Pay Grade. FLSA status, salary type, and pay grade were included for the jobs in the updated data provided. The EEO function of the jobs was not provided so once again this information was drawn from the 2004 analyses. Jobs not included in the 2004 analyses because they did not exist or no incumbents held the positions were slotted with jobs that appeared to be similar or represented job progressions. It appears based on the number of people in the various functions that some jobs may have had different titles in the updated database relative to the database used in 2004.

The results of these analyses provide the percentage of African-American and White employees in jobs classified at the various levels or categories in the variables described above. The results directly relate to the question or issue of job assignment relevant to this litigation.

*FLSA Status.* For FLSA status, an additional code, Management, was included in the 2007 data which was not included in the data provided in 2004. Therefore, results are reported for three FLSA status codes: exempt, non-exempt, and management. As in

the 2004 results, the 2007 results, presented in Slides 89 through 96 indicated statistically significant differences between African-American and White employees based on the FLSA Status of the positions or jobs held. Specifically, significantly fewer African-American employees than White employees held positions categorized as exempt in each year from January 2000 through October 11, 2006. The results indicate that only 4.52% to 6.88% of African-American employees held positions categorized as exempt during the years 2000 through 2006 while 13.87% to 17.43% of White employees in Metro Water held positions categorized as "exempt" during the same period. Conversely, a significantly greater percentage of African-American employees held non-exempt positions than White employees in each year. The percentages ranged from 87.62% to 94.80% for African-Americans versus 78.00% to 83.40% for White employees. There were no significant differences in the number or percentage of African-American and White employees holding management level jobs. However, until 2005, only one or two African-American employees were in positions classified as "management" positions. The number of employees in both groups holding jobs in the "management" category increased in 2005. It is possible that certain jobs were reclassified during this period. However, the trend identified in the 2004 analyses exists through 2006. Namely, fewer African-American employees held exempt level jobs than White employees in Metro Water and the reverse was true for non-exempt jobs.

*EEO Function.* Results of the analyses based on the EEO Function of positions, presented in Slides 97 through 105, indicated that a significantly greater proportion or percentage of African-American employees than White employees held jobs in the Service Maintenance EEO Function in each year from 2000 through 2006. The

13

percentages ranged from 29.95% to 47.92% for African-American employees versus 17.44% to 21.49% for White employees. The percentage of African-Americans holding Service Maintenance jobs decreased from 2003 to 2006 but there were still significantly more African-Americans in these jobs.

A significantly smaller percentage of African-American employees than White employees held positions classified in the Professional function for the period 2000 through 2006. The percentages ranged from 5.08% to 7.64% for African-American employees versus 13.81% to 16.36% for White employees. Similar results were found for the Technician function for 2000 through 2003 where the percentages ranged from 3.49% to 8.00% for African-American employees versus 12.05% to 16.37% for White employees. For the period 2003 through 2006 a significantly greater percentage of African-American employees than White employees held positions in the Water Service Maintenance function. The percentages ranged from 6.86% to 9.14% for African-American employees versus 1.85% to 2.67% for White employees. Finally, as in the 2004 analyses, a significantly smaller proportion of African-American employees held positions in the Administrative Support EEO Function in the year 2000.

*Salary Type.* Once again, the results of analyses based on the Salary Type of positions, presented in Slides 106 through 114, indicate that a significantly greater proportion or percentage of African-American employees than White employees held positions classified in the TG salary type in each year. The percentages ranged from 34.1% to 38.42% for African-American employees versus 18.66% to 24.29% for White employees. Again, the TG salary type covers positions with "worker responsibility" involving the performance of physical work that requires knowledge of, or experience in,

14

a trade, craft, or of a manual-labor nature. As with the 2004 analyses, the 2007 results indicate that significantly fewer African-American employees than White employees held positions classified in the SR salary type in each year. The percentages ranged from 32.56% to 42.08% for African-American employees versus 52.40% to 54.91% for White employees. The SR salary type includes jobs such as Biologist, Fleet Manager – Heavy Equipment, Special Projects Manager. Finally, a significantly greater percentage of African-Americans held positions in the TL salary type in the year 2000.

*Pay Grade by Salary Type.* The 2007 results, presented in Slides 115 through 171, once again also indicated that in almost all cases, a greater percentage of African-Americans held positions at lower pay grades in almost all salary types than White employees holding positions in the same salary types. For example, in the year 2005, approximately 43% of the African-American employees and approximately 17% of White employees holding positions in the TG salary type were in pay grades 2 through 6. Conversely, approximately 83% of White employees and approximately 57% of African-Americans holding positions in the TG salary type were in pay grades 7 through 13. With the exception of the TS salary type, this trend was found to be consistent across years and salary types, similar to the results found in 2004. For the TS salary type, beginning in 2003 and continuing to 2006, a greater percentage of African-American employees held positions at higher pay grades than White employees. It should be noted however that the number of African-Americans in the TS salary type is small. The number of African-American employees in the TS salary type during these years ranged from nine (9) to twelve (12). As a result, individual changes can have a

Case 3:04-cv-00630   Document 143-1   Filed 04/08/08   Page 15 of 23 PageID #: 3188

significant impact on the percentages. However, as in 2004, the results indicate that African-Americans typically held jobs in lower pay grades for most other salary types.

**Analysis of Job Groupings and Progressions**

It is unclear exactly how Metro Water evaluates and grades its jobs. However, it is clear that according to the Metro Water compensation system, a wide variety of jobs are grouped into a common salary type and pay grade regardless of the lack of similarity in the work performed or the requirements of the jobs. For example, pay grade 10 of the SR salary type in 2004 includes Administrative Services Officer 3, CAD/GIS Analyst 2, and Chemist 2. The functions of these jobs and their entry requirements are certainly different based on the Metro Water job descriptions provided in 2004.

Based on the diverse jobs included in each of the Metro Water salary types and pay grades, analyses at the salary type and pay grade levels alone are inappropriate as they do not present a complete picture. As a result, rational job groupings were created based on information in the Metro Water job descriptions, organizational charts, and salary plans provided in 2004. The job groupings were formed based on the similarity of work performed in the jobs and a review of the requirements of the jobs, such as, education or experience. The job groupings, shown in Slides 174 through 176, created include:

- Accounting
- Administrative Assistant
- Automotive

- Environmental Lab
- Equipment & Supply
- Equipment Maintenance

- Public Information
- Public Property
- Safety

16

- Biologist
- Building Maintenance
- CAD/GIS
- Chemist
- Compliance Inspector
- Customer Service
- Director
- Engineer
- Environmental Compliance

- Equipment Operator
- Human Resources
- Industrial Maintenance
- Information Systems
- Meter Repair
- Office Support
- Painter
- Printing
- Programs

- Secretary
- Service Representative
- Skilled Craft Worker
- Stores
- System Services
- Technical Services
- Training
- Treatment Plant
- Utility

The jobs within each group, where appropriate, are organized according to their salary type and pay grade. Some job groupings (for example, Programs) consisted of a single job. Similar jobs were grouped in this manner to represent job progressions where it is assumed employees would move from level to level, and as such from pay grade to pay grade. In many cases the job progressions include the supervisory and manager level jobs in the progression. This means that jobs in some progressions span different salary types. This is relevant as it allows for an analysis of representation in what could be the top of a given progression. The job groupings, individual jobs in each, salary type, pay grade, and the number of African-Americans and Whites in each are presented for 2000 through 2006 in Tables 15 through 21 in the Exhibit provided.

Promotion rates alone do not provide a complete picture when comparing the advancement of African-Americans and Whites. For example, the advancement rates of

both groups could be high or low and not significantly different. However, as presented previously, the Metro Water data indicate that during the relevant time period, African-Americans typically held positions in lower pay grades within all salary types, except TS. As such, their promotions could be into jobs lower in the progressions or more precisely jobs at lower levels with lower salaries. This is a significant issue, and as important as the promotion rates of the groups, since it would negatively impact both salary and future advancements. An analysis of representation of African-Americans and Whites in the various progressions from year to year provides a much more accurate picture of the job assignments and opportunities for advancement of African-American and White employees. Findings based on an analysis of the job progressions are described below.

*Findings.* The data in Tables 15 through 21 indicate that during the years 2000 through 2006 African-Americans have been placed into certain job progressions and jobs, such as Building Maintenance, Customer Service, Industrial Maintenance, more often than others.  Looking at the jobs in many of the progressions also indicates that African-Americans held jobs at lower pay grades in the progression and their movement into higher level jobs, including supervisory or management jobs, has been limited. Some examples, highlighted in Slides 183 through 188 include:

- Building Maintenance where the progression consists of Custodian (TG-5 salary type and pay grade) and Building Maintenance Leader (TG-6). With the exception of a single White employee in 2000 and 2001, African-Americans held these jobs from 2000 to 2006.

-  Customer Service, where after 2000, the progression includes Customer Service Field Representative 1, 2, 3 (SR-5, 6, 7), Customer Services

Supervisor (SR-10), Customer Service Assistant Manager (SR-12), and Customer Service Manager (SR-14). African-Americans primarily held Customer Service Field Representative jobs, and until 2005, a majority of African-Americans were in the SR-5 and SR-6 level jobs. Prior to 2004, a majority of White employees held jobs at the SR-7 level. However, the data also indicate that there were no African-American Customer Service Supervisors until 2006 and no African-American Customer Service Assistant Managers during the period 2000 through 2006.

- Industrial Maintenance where the progression consists of Maintenance & Repair Worker 1, 2, 3 (TG-3, 4, 6); Maintenance & Repair Leader 1, 2 (TL-7, 9); Industrial Electrician 1, 2 (TG-12, TL-12); Industrial Mechanic 1, 2 (TG-11, TL-11 or TL-14 in 2006); Industrial Electronics Technician 1, 2 (TG-13, TL-13); Industrial Technician Master (TL-14); Industrial Maintenance Supervisor 1, 2 (TS-12, TS-13). African-Americans predominately occupied Maintenance & Repair Worker or Maintenance & Repair Leader jobs. African-Americans were under-represented in more skilled positions (e.g., Industrial Electrician, Industrial Mechanic) and Industrial Maintenance Supervisor jobs. These results indicate limited advancement through the entire progression for African-Americans.

- Engineer: The progression includes Engineer Technician 1, 2, 3 (SR-6, 8, 10) and Engineer 1, 2, 3 (SR-12, 13, 14). African-Americans only held Engineering Technician jobs until 2004 when one African-American held an Engineer job. No African-Americans held an Engineer-in-Training job until 2006.

19

- Water Maintenance where African-Americans represented approximately 67% of the employees in the progression in 2006. The Water Maintenance Technician jobs in the progression range from TG-3 to TG-6 and the Water Maintenance Leader jobs range from TL-7 to TL-9.

- Information Systems where the jobs in the progression range from SR-8 to SR-14. No African-Americans held jobs in this progression during the period 2000 through 2006.

The examples are not exhaustive but do demonstrate a notable trend as described above during the period 2000 through 2006. Based on the results of these analyses, the representation of African-Americans in the various jobs and lower pay grades certainly impacted salaries and opportunities for advancement.

To illustrate this point and although the analyses represent simple, general analyses, race was correlated with salary for each year to determine if there in fact was a general relationship between salary and race. The results indicated that there was a significant relationship between salary and race for all salary types except TS across all years. The correlations, shown in Slide 191, indicated that salaries of African-Americans tend to be lower than the salaries of Whites in all salary types, except TS, during the years 2000 through 2006.

It may be argued that African-Americans are not better represented in certain jobs or job progressions because they do not meet the requirements or minimum qualifications for the jobs. It is true that representation is impacted by a number of different factors such as hiring decisions, promotions, or transfers. Critical questions however, and ones that are relevant to the current litigation, are how are such decisions

20

made and what information is used to make the decisions? A review of the job descriptions provided in 2004 indicates that many jobs have specified qualifications or requirements, such as education or experience. It is unclear, however, how these minimum qualifications were established, validated, or if they were applied consistently to all individuals. These are critical questions that relate to the appropriateness of minimum qualifications used in the employment decision making process. In this case, many of the job descriptions also included the statement "More specific degree, certification, and experience requirements may be included on the position announcement as vacancies occur." This statement suggests that requirements can be changed or added when job openings are posted. This causes at least two concerns. First, the requirements may not actually be necessary to perform the job, in which case otherwise qualified people unnecessarily could be eliminated from consideration for selection into the job. And second, the requirements could be applied inconsistently and changed to fit a specific candidate or candidates for the job. Again, this would be inappropriate and may result in otherwise qualified individuals being unnecessarily eliminated from consideration for selection into the job.

Another issue with the requirements or minimum qualifications used in the employment decision making process Metro Water relates to the possibility or use of equivalent standards. If African-Americans do not in fact meet the minimum qualifications for a job, it is possible that equivalent qualifications could be established. For example, experience in a given job could be used in lieu of a specific education or degree requirement. In many cases, this may afford African-Americans an opportunity to move into the higher level jobs or other job progressions.

Other aspects of the employment process that may impact the observed results in African-American representation in the various jobs are the selection procedures (for example, interviews). It is unclear what procedures are used to select people into Metro Water jobs, however, the primary issues again are the appropriateness, validity, and consistent application of the selection procedures and standards. The procedures must be appropriate, valid and consistently applied.

## V. SUMMARY OF CONCLUSIONS

Consistent with my original 2004 results and their replication in 2007, a significantly smaller percentage of African-American employees are represented in exempt positions, positions classified in the Professional and Technician EEO Functions, positions in the SR salary type that includes professional and manager positions, and positions in higher pay grades within almost all salary types.

Further, evidence indicates that the opportunity for African-Americans to be promoted, or to earn more, has been limited due to their job assignments. The results of the analyses indicate that African-Americans have been "slotted" or placed into jobs where the opportunity for promotion into higher level jobs and increased pay have been limited. This represents the practical significance of the findings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed April 8, 2008 in Decatur, Georgia.

Michael E. Moomaw, Ph. D.