IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CLAUDE GRANT, ORALENE DAY, )
PRINCESS MARTINDALE, FALETHA REED, )
DARRYL MCKIBBENS, DARREL GANT, )
ANTONIA MCKISSACK, PAMELA TUCKER, )
SANDRA DERRICK, individually and on )
behalf of all others similarly situated, )
) NO. 3:04-0630
Plaintiffs, ) JUDGE HAYNES
v. )
)
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
TENNESSEE, )
)
Defendant. )

**MEMORANDUM**

Before the Court is the Plaintiffs' motion for a new trial (Docket Entry No. 194) contending that a new trial is warranted because the jury's verdict is against the clear weight of the evidence and the improper and prejudicial conduct of Defendant's counsel. The Defendant has filed its response (Docket Entry No. 204) contending that the evidence support the jury's verdict and its counsel's conduct did not affect the jury verdict.

This has been an extensive proceeding in which the Court has reviewed the evidence in various contexts. See Docket Entry Nos. 25, 26, 30, 88 and 89. To avoid undue repetition, the Court has reviewed the parties' citations to the trial record. Other pertinent proof is the testimony of Scott Potter, director of the Metro Water Department who was made aware of a paper hung at his department's central facility in 1999 on "how to hang a nigger and how to kill a nigger". Potter stated that he asked his human relations officer to look into the matter and later learned that the source of this material could not be determined. Yet, there is not any

documentary evidence of any investigation nor any remedial measure to address this highly racist and offensive material at the Defendant's central facility. In addition, the department's training material included a reference to how to handle "the hot head gorilla" in referring to a customer. Potter is responsible for the training of the department employees, but relies on others to do the training. In this Court's experience, these types of evidence have been found to be a critical part of a racially hostile work environment. Potter was also involved in the Christine Binkley-Princess Martindale incident in which Martindale was suspended, but Binkley who made false statement about Martindale was only transferred at Potter's directive. The Metro Civil Service Commission found that the disparate treatment of Martindale was a "miscarriage of justice." Plaintiffs' Exhibit 43.

Aside from the lay witnesses' proof , Dr. Moomaw's statistical analyses revealed that Metro Water's selection system favored white employees in promotions or preferred job assignments through specially tailored questions for the person preselected and modifications to job requirements. April 18, 2008 Transcript at pp. 41-44, 53-56. Dr. Moomaw analyses found a pattern of African Americans being historically underrepresented in higher level jobs while being over- represented in lower job classifications. See e.g., April 18, 2008 Transcript at pp. 18-22, 41-44, 5 1-52, 59-60, 96-100. When a black employee possessed the educational requirement, the job description was changed and the person selected was white.

Robin Brown a defense witness testified about Darrel Gant's alleged "anger problem" that resulted in his suspension. When asked on cross examination if Gant had never been accused of displaying anger either before or after this incident, Brown responded that Gant bad poked a female employee in the stomach stating "I can help you get rid of that" (suggesting that Gant

2

could help the female employee lose weight). The totally inappropriate and unresponsive answer to a cross examination question is typical of matters that the Defendant improperly placed before the trial.

Plaintiffs' second ground is that defense counsel's conduct during trial was so improper and prejudicial that a new trial is warranted. During the course of the nine-day jury trial in this case with objections by Plaintiffs' counsel, the Court properly cited defense counsel numerous times for his inappropriate conduct. Plaintiffs cite as examples that defense counsel : (1) suggested an improper matter to the jury (Exhibit 2, April 24, 2008, Rough Draft Trial Transcript p. 81); (2) tried to lay an improper inference (Exhibit 2, April 24, 2008, Rough Draft Trial Transcript at pp. 49-50); and (3) tried to get a witness to testify improperly about a document (Exhibit 2, April 24, 2008, Rough Draft Trial Transcript pp. 52- 53). In addition, Plaintiffs' counsel and the Court took issue with defense counsel's attempt at "funneling" most of their evidence through one witness to avoid effective cross-examination of the actual declarants. Exhibit 1, April 23, 2008, Rough Draft Trial Transcript at pp. 3-4 and improperly summarized proof by mischaracterizing the witnesses' testimony. Exhibit 1, April 23, 2008, Rough Draft Trial Transcript at p. 9.

Other examples of defense counsel efforts were to introduce clearly irrelevant facts as occurred during the cross examination of Claude Grant and the cross examination of Robin Brown, Defendant's designated representative at trial. Grant was asked about a harassment complaint lodged against him by a female employee in 1997 apparently to impeach Grant. The incident, which occurred eleven (11) years before trial was thoroughly investigated and the Defendant exonerated Grant. There was not any proof that the incident had any adverse effect on

3

Grant's further promotional opportunities.

At the end of trial, outside the presence of the jury, when defense counsel attempted to make another offer of proof, the Court again noted that defense counsel was trying again to introduce a host of other evidence through a witness who was not personally involved and the evidence was thus unreliable. Exhibit 2, April 24, 2008, Rough Draft Trial Transcript at pp. 173-174. Finally, at the close of Defendant's proof, in the presence of the jury when asked if Defendants had any additional proof, defense counsel stated that they had the "offer of proof." The Court set a defined procedure for evidentiary objections and proffers to avoid any jury exposure to extraneous or improper matters. The Court expressly warned defense counsel several times that he was improperly suggesting to the jury that there was evidence that they were not hearing. Exhibit 2, April 24, 2008, Rough Draft Trial Transcript at pp. 167-1 68. Defense counsel ignored the Court's repeated rulings about his suggestions to the jury that other evidence was "out there" and was being kept from them. Exhibit 2, April 24, 2008, Rough Draft Trial Transcript at pp. 168-169.

During the trial, the Court twice suggested to defense counsel that based upon his disregard of the Court's instructions, a new trial may be necessary. (Exhibit 3, April 25, 2008, Rough Draft Trial Transcript pp. 19, 32). Thereafter and based on defense counsel's closing argument, the Court told defense counsel that the jury instructions would have to be revised again because defense counsel improperly told the jury that the only way plaintiffs could recover was under the pattern and practice method of proof. (Rough Draft Trial Transcript at p. 110).

## II. Conclusions of Law

Rule 59 of the Federal Rules of Civil Procedure provides that a new trial may be granted

4

after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(l)(A). The granting of a new trial is within the trial court's sound discretion. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980) and "is confided almost entirely to the exercise of discretion on the part of the trial court". Id. Under Fed. R. Civ. P. 59(a)(l)(A) "a new trial is warranted when a jury has reached a seriously erroneous result ...." Strickland v. Owens Corning, 142 F.3d 353, 357 (6th Cir. 1998) (citation omitted). A "seriously erroneous result" is evidenced by: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, 78 F.3d 1041, 1046 (6th Cir.1996).

In Strickland, the Sixth Circuit outlined the following analysis for ruling on a motion for a new trial:

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

142 F.3d at 357 (quoting J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir.1991)).

In the Sixth Circuit, if "there is a reasonable probability that the verdict of [the] jury has been influenced by such conduct, it should be set aside." Strickland, 142 F.3d at 358 (citing Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir.1980) and Holmes, 78 F.3d at 1045-46 ("[A] new trial is warranted when a jury has reached a seriously erroneous result as

5

evidenced by ... the proceedings being influenced by prejudice or bias.")).

As to the weight of the evidence contention, considering all of the proof, the Court concludes that the jury's findings were against the clear weight of the evidence at trial. The jury's verdict rejecting Plaintiff Martindale's claim leaves the Court with serious reservations about the jury's consideration of the proof on the Plaintiffs' claims. However, the Court weights the evidence, the conduct of defense counsel is a separate basis for granting Plaintiffs' motion.

As to the conduct of defense counsel, in Cleveland, the Sixth Circuit assessed an improper conduct of trial counsel stating that "the determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court." 624 F.2d at 756 (citations omitted). "[W]hether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination." Id. at 756 (citation omitted). "The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial . . . The trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." Id. at 756 (citation omitted).

As examples of improper conduct by trial counsel, the Sixth Circuit stated that trial "counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects". Id. at 756 (citation omitted). If trial counsel does so, " where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, [the verdict] should be set aside." Id. In determining whether "there is a reasonable probability that the verdict of a jury has been influenced" by counsel's conduct, the Court must

6

examine the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict. Id. .

In assessing these factors on counsel's conduct, the Court need not "rely on any of the individual instances or types of impropriety." Cleveland, 624 F.2d at 758-59 (internal citations omitted). In Cleveland, the Court noted that counsel's improprieties permeated the entire trial in "a continuing pattern of misconduct." Id. There, counsel's remarks "were persistently made over the recurring and almost constant objection of counsel for the appellant," and were repeated even though the trial court had sustained the objections and admonished the jury. Id. In addition, defense counsel persisted even after the trial court explicitly reprimanded him for his misconduct. The Court in Cleveland held that the cumulative effect of counsel's remarks undoubtedly served to leave the intended, indelible impression upon the minds of the jurors. Id.

Here, defense counsel repeatedly ignored the Court's rulings on his objections and his legal contentions about the proof. Without any factual basis, Metro's counsel suggested to the jury that the Plaintiff's counsel destroyed evidence. Despite an express ruling and the Court's quotation from a United States Supreme Court decision on the evidentiary issue, defense counsel made serious misstatements of law to the jury that Plaintiff's pattern and practice proof applied to all of the Plaintiffs Title VII claim and that Plaintiffs' expert statement proof had to address all variables on employment. Despite the Court's instructions to the jury, defense counsel repeatedly made references to the jury to testimony excluded by the Court. During the trial, the Court repeatedly and expressly admonished defense counsel that the Court was considering a

7

mistrial, if his contemptuous conduct persisted. Nonetheless, Metro's counsel continued his misconduct. The Court is convinced that defense counsel's conduct was designed to send a message to the jury that probative evidence was excluded and the law and instructions given by the Court were wrong. In doing so, defense counsel seemed determined to undermine the Court's evidentiary rulings by presenting improper matters for the jury's consideration. The record does not capture defense counsel's disregard for the Court's rulings. See Maday v. Public Libraries of Saginaw, 480 F.3d 815, 817 (6th Cir. 2007).

Upon consideration of all of the circumstances of the trial, the Court concludes that more than a reasonable probability exists, that the jury's verdict was influenced by the improper conduct of defense counsel. The Court reaches this conclusion is based upon the totality of the circumstances, including the nature of defense counsel's comments, their frequency, their lack of relevancy to the issues before the jury, the manner in which the parties and the Court treated the comments, the strength of the case, and the verdict itself.

The Defendant's counsel cites the Court's jury instructions to disregard counsel's statements if those statements conflict with the Court's instructions and other instructions during the trial. Yet, the Sixth Circuit has held that even curative instructions were plainly, "not sufficient to remove the probability of prejudice." Cleveland, 624 F.2d at 759 (internal citation omitted). The Sixth Circuit noted:

> . . . the bench and bar are both aware that cautionary instructions are effective only up to a certain point. There must be a line drawn in any trial where, after repeated exposure of a jury to prejudicial information, . . . cautionary instructions will have little, if any, effect in eliminating the prejudicial harm. O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1309 (5th Cir. 1977).

Cleveland, 624 F.2d at 759.

For the above stated reasons, the Court concludes that Plaintiffs' motion for a new trial on their individual and class claims should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___27TH___ day of March, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CLAUDE GRANT, ORALENE DAY, )
PRINCESS MARTINDALE, FALETHA REED, )
DARRYL MCKIBBENS, DARREL GANT, )
ANTONIA MCKISSACK, PAMELA TUCKER, )
SANDRA DERRICK, individually and on )
behalf of all others similarly situated, )
) NO. 3:04-0630
Plaintiffs, ) JUDGE HAYNES
v. )
)
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
TENNESSEE, )
)
Defendant. )

## ORDER

In accordance with the Memorandum filed herewith, the Plaintiffs' motion for a new trial (Docket Entry No. 194) is **GRANTED**. This action is set for trial **Tuesday, July 14, 2009 at 9:00 a.m.** The final pretrial conference is set for **Monday, June 29, 2009 at 3:00 p.m.**

It is so **ORDERED**.

**ENTERED** this the 27th day of March, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge