UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CLAUDE GRANT, et al. | ) | |
| | ) | |
| v. | ) | NO. 3:04-cv-00630 |
| | ) | CHIEF JUDGE CRENSHAW |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Decertify the Class (Doc. No. 387). The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") asks the Court to decertify the class that was certified in this case in 2005. For the reasons stated herein, Metro's Motion will be GRANTED.

### BACKGROUND

This race discrimination case was brought against Metro for alleged Title VII violations[1] in Metro's Water Services Department ("MWS"). Plaintiffs claim that MWS engages in a systematic policy and practice of discrimination against African-American employees in post-employment opportunities such as job assignments, promotions, pay and discipline. (Doc. No. 118 at 2.) Plaintiffs originally alleged both disparate treatment and disparate impact claims. At trial, a jury found for

---

[1] Plaintiffs also brought claims pursuant to 42 U.S.C. § 1981, and the Court certified a class under that statute, but the Sixth Circuit has recognized that there is no independent cause of action against municipalities under Section 1981. Arendale v. City of Memphis, 519 F.3d 587, 594 (6th Cir. 2008); Berry v. Giles, 2016 WL 494646 at * 3 (M.D. Tenn. Feb. 9, 2016). Therefore, to the extent Plaintiffs' Section 1981 have not heretofore been dismissed, they will be dismissed by contemporaneous Order.

Metro on Plaintiffs' disparate treatment claims.[2] Following the nine-day trial and the jury's verdict for Metro, the Court granted Plaintiffs' Motion for New Trial, finding that the verdicts were against the clear weight of the evidence and that the proceedings were prejudiced by the conduct of Metro's counsel. (Doc. No. 223.)

The Sixth Circuit Court of Appeals has issued three opinions in this matter. The appellate court denied Metro's appeal of the Court's Order granting a new trial as premature because not all claims had yet been decided; denied Metro's petition for a writ of mandamus to reinstate the jury verdicts; and directed this Court to rule on the disparate impact claims. (Doc. No. 236.) This Court then ruled for Plaintiffs on their disparate impact claims. (Doc. Nos. 237-38.) On August 26, 2011, the Sixth Circuit reversed this Court's ruling on disparate impact, holding that, as a matter of law, Plaintiffs failed to demonstrate a *prima facie* case of disparate impact discrimination. (Doc. Nos. 285 and 319.)

On April 28, 2016, almost five years later, the Sixth Circuit vacated the Court's Order closing the case, and remanded the case for further proceedings consistent with its opinion. (Doc. No. 319.) On February 27, 2017, this Court denied Metro's Motion to Vacate the Order Granting a New Trial. (Doc. No. 386.) This case is now set for a bench trial on March 6, 2018, on Plaintiffs' disparate treatment claims only. (Doc. No. 393.)

## DECERTIFYING A CLASS

Rule 23 of the Federal Rules of Civil Procedure provides that an order that grants or denies class certification may be altered or amended before final judgment. Fed. R. Civ. P. 23(c)(1). A

---

[2] The Court reserved decision on Plaintiffs' disparate impact claims, and the only questions on the Verdict Form related to disparate treatment. (Doc. No. 188.)

2

district court retains significant discretion to make decertification and modification decisions with regard to class actions. In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation, 302 F.R.D. 448, 459 (N.D. Ohio 2014). Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments. General Tel. Co. of Sw. v. Falcon, 102 S.Ct. 2364, 2372 (1982).

It is in the sole discretion of the court to determine if a prior ruling should be reconsidered, and the Sixth Circuit has declined to impose any conditions or limitations upon the Court's power to review a prior ruling. Grant v. Metropolitan Gov't of Nashville and Davidson County, TN, 2017 WL 1153927 at * 2 (M.D. Tenn. March 27, 2017) (citing Katt v. Titan Acquisitions, Inc., 244 F.Supp.2d 841, 855 (M.D. Tenn. 2003)). The Sixth Circuit has stated three reasons to reconsider a prior ruling: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by controlling authority; and (3) where a decision is clearly erroneous and would work a manifest injustice. Katt, 244 F.Supp.2d at 856.

In order to certify a class, the Court must be satisfied that Plaintiffs have met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Metro contends that, in light of the Supreme Court's 2011 decision in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011), Plaintiffs cannot show commonality or typicality.

In 2005, the Court certified a class in this case of "all former, current, and future African-American employees of the Metropolitan Government of Nashville and Davidson County, Metro Water Services from the period January 1, 2000 to the present." (Doc. No. 26.) Metro moves to decertify that class in light of Dukes.

ANALYSIS

In Dukes, the district court certified a nationwide class of more than a million female employees, alleging both disparate impact and disparate treatment claims based on gender. Dukes, 131 S.Ct. at 2544. The plaintiffs there claimed that Wal-mart's local managers' discretion over pay and promotions was exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees. Id. at 2548. The plaintiffs also alleged that Wal-Mart's refusal to "cabin" its managers' authority amounted to disparate treatment of women. Id.

The crux of the issue in Dukes was commonality, whether there were questions of law or fact common to the class. The Court held that it is not enough for the plaintiffs to demonstrate that the potential class members have all suffered a violation of the same law. Rather, the Court stated, their claims "must depend upon a common contention - for example, the assertion of discriminatory bias on the part of the same supervisor." Dukes, 131 S.Ct. at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

In Dukes, the plaintiffs challenged the legality of literally millions of employment decisions at once. The Court stated: "Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will

4

produce a common answer to the crucial question *why was I disfavored*." Dukes, 131 S.Ct. at 352 (emphasis in original). Quoting its decision in Falcon, the Court stated:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.

Dukes, 131 S.Ct. at 352-53 (quoting Falcon, 102 S.Ct. at 2370).

The Court suggested two ways to bridge the "conceptual gap" referenced in Falcon. The party seeking class certification must show that the employer used a biased testing procedure or produce "significant proof" that the employer operated under a general policy of discrimination, if that discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes. Dukes, 131 S.Ct. at 353; Davis v. Cintas Corp., 717 F.3d 476, 485 (6th Cir. 2013).

A biased testing procedure is not at issue here. Plaintiffs contend that Metro operated under a general policy of discrimination because the purported class members were subjected to an entirely subjective decision-making process.[3] Subjective or discretionary employment practices may be analyzed under a disparate *impact* theory in appropriate cases; but unless Plaintiffs can somehow show that Metro's managers all used a "common mode of exercising discretion" that pervades the entire department (all divisions), then Plaintiffs are unable to show that all class members' claims will in fact depend on the answers to common questions. Davis, 717 F.3d at 488 (citing Dukes, 131

---

[3] As indicated below, the Court's Order granting class certification states that MWS had facially *objective* criteria for promotions, pay decisions, and discipline. (Doc. No. 25 at 30.)
5

S.Ct. at 2554-55). Examining individual adverse employment actions may not be necessary for a disparate *impact* analysis, but such examination is necessary for these disparate treatment claims.

Here, even the circumstances of each of the named Plaintiffs differ. For example, Plaintiff Grant alleges denial of promotional opportunities and claims that MWS reclassified a position to prevent specifically Mr. Grant from applying for the position. (Doc. No. 25 at 6.) Clearly that alleged action applies only to Grant, not to any other members of the class. Plaintiff Day complains of being reassigned and denied accommodations for her disability because of her race. Id. Certainly not every class member will allege claims related to disabilities, claims with the same circumstances as Day. Plaintiff Martindale complains of discipline for tardiness and discipline for not providing a doctor's note on her return to work following illness. (Doc. No. 25 at 7.) The circumstances surrounding her complaints are not common to all African-American employees. There must be individual analysis to determine whether these alleged decisions were based upon race.[4]

Plaintiff Reid's claim involves an Administrative Service Officer III position and Metro's failure to post a job. Plaintiff McKibbens' claims involve the position of Maintenance and Repair Leader II and the withholding of an application for and failure to promote him to that position. Plaintiff McKissack complains about the Maintenance and Repair Leader II position as well, but he also alleges that he was required to work "out of class" for more than 100 days, that he received less pay for his position than employees with less experience, and that he was mis-classified in the pay

---

[4] The Court's prior Order (Doc. No. 25) cites to the Plaintiffs' EEOC charges, which state, among other things: "I and other similarly situated African-American employees have been adversely affected . . ." Determining who are "similarly situated" also requires individual analysis. Plaintiffs assert that their class encompasses "former and future similarly situated African American employees," again requiring individual analysis to determine who are similarly situated.

plan. Ms. Tucker's claims involve an alleged failure to interview her for three supervisor positions. Ms. Derrick alleges that she failed to get a promotion, failed to be paid for training, failed to get a pay raise, was disciplined unfairly, was subjected to heightened scrutiny and unfair criticism, and was retaliated against. The circumstances surrounding these claims are not common to all African-American employees.

Plaintiffs argue that because cases challenging subjective decision-making processes can be certified as class actions, the Court's certification should stand. As the Supreme Court stated, however, such a subjective policy can be the basis for a disparate *impact* claim, but recognizing that a claim "can" exist does not mean that every employee in a company (or a governmental department) with that policy has a common claim. Dukes, 131 S.Ct. at 355.[5] Moreover, the Court's class certification Order indicates that MWS had facially *objective* criteria on the issues of promotions, pay and discipline. (Doc. No. 25 at 30.) Plaintiffs argue that MWS managerial employees "ignore" the objective criteria. Determining whether, which, why, to what extent and how often such employees ignored the objective criteria would involve individual analysis. For example, on Plaintiff Grant's allegations concerning promotions, the Court would need to know the positions for which he applied, how or if he met the required qualifications and objective criteria, and how his qualifications compared to the persons who got the promotions.

The class previously certified in this case does not make any distinctions for the various divisions of the MWS; for the various supervisors making decisions; for the various and relative

---

[5] Plaintiffs also argue that their statistical evidence and expert analysis supports class certification, but that expert testimony and statistical evidence were rejected by the Sixth Circuit and were relevant only to their disparate impact claims, which have been dismissed. (Doc. No. 285.) Even if that evidence were considered, it does not change the result on the disparate treatment claims here.

7

qualifications of class members and those who were allegedly favored over them; or for the different positions sought. The class definition includes both past and future employees of MWS, making no allowance for changes in job descriptions or requirements or for changes in management and decision-makers. Plaintiffs have not shown that the decisions of all MWS' managers can be evaluated in "one stroke." Because the various decisions at issue here are not alike, do not involve the same job descriptions, job qualifications or decision-makers, and because all the different employees from different departments with different supervisors are grouped together, there is no "glue holding the alleged reasons for all those decisions together." Dukes, 131 S.Ct. at 352. Therefore, examination of all the class members' claims will not produce a common answer to the crucial question of why they were not favored. Id. Moreover, MWS could have different defenses to each claim.

> In Bacon, cited by the Court in its class certification Order, the Sixth Circuit stated:
>
> We view with skepticism a class that encompasses: (1) both workers and supervisors; (2) production-line workers and those in administrative positions; (3) workers in four plants with different production capabilities; and (4) workers and supervisors spread over more than 30 departments. Because class members have such different jobs, we find it difficult to envisage a common policy regarding promotion that would affect them all in the same manner.

Bacon v. Honda of America Mfg., Inc, 370 F.3d 565, 571 (6th Cir. 2004). Similarly here, the class members have different jobs with different responsibilities, work in different divisions and are supervised by different employees. There is no "glue" that holds the alleged adverse employment decisions together. Tartt v. Wilson County, TN, 2012 WL 208943 at * 7 (M.D. Tenn. Jan. 24, 2012) (citing Dukes).

The Court finds that the claims of the class, as defined and certified by this Court in 2005, cannot be determined in "one stroke." Because of the individualized circumstances of the decision-

8

makers, the decisions themselves, the job positions, the qualifications for those positions, the qualifications of all applicants or persons considered for the positions, and the particular circumstances under which the decisions were made, the Court cannot say the these claims can productively be litigated at once.

The Court finds that Plaintiffs do not meet the commonality requirement of Fed. R. Civ. P. 23(a) as interpreted by the Supreme Court in Dukes. The Court, therefore, need not reach the issues of Rule 23(b).

## CONCLUSION

For all these reasons, Metro's Motion to Decertify the Class (Doc. No. 387) will be GRANTED. The claims of the named Plaintiffs remain set for a bench trial on **March 6, 2018.**

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE